UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JONATHAN H. PARDEE, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>CONSUMER PORTFOLIO SERVICES, INC.,<br><br>*Defendant.* | C.A. No. 01-594L |

**PLAINTIFFS SECOND AMENDED COMPLAINT**

**I.   INTRODUCTION**

This is an action by plaintiffs Jonathan H. Pardee ("Pardee") and Carol P. Havican, Trustee of the Jonathan H. Pardee Charitable Remainder Trust (the "Trust"), for indemnification from defendant Consumer Portfolio Services, Inc. ("CPS") for damages that Pardee and the Trust have incurred, and will continue to incur, as a result of lawsuits filed against Pardee in the Los Angeles County, California, Superior Court.  Case No. BC244111 was designated as the "lead" case for those lawsuits.   Until January 7, 2003, the case IN RE: STRUCTURED SETTLEMENT LITIGATION included lead Case No. BC 244111 and related cases, BC244271, BC245412, BC245579, BC246051, GC026372, BC243787, BC248592, BC248593, BC248594, BC248597, BC248598, BC248599, BC248600, and BC249418.  On that date, an order was issued in Los Angeles County Superior Court in California, which related BC279691 as well, and continued the designation of BC244111 as the "lead" case.  All these cases named Plaintiffs (among others) in connection with the failure of the Structured Settlement Company (or as it later came to be known, Stanwich) to fulfill its contractual obligations to Payees in structured tort claim settlements.  Case Nos. BC 244111, BC244271, BC245412, BC245579, BC246051, GC026372, BC243787, BC248592, BC248593,

1

BC248594, BC248597, BC248598, BC248599, BC248600, and BC249418 are hereinafter referred to individually as the "California Action", and BC279691 is referred to as the "California TIGRs Action", both of which are sometimes collectively referred to as "the California Litigation". The "Connecticut Litigation" refers to an action filed against Pardee and the Trust (the "Pardee Parties") in the United States Bankruptcy Court for the District of Connecticut. The actions all resolved in favor of Pardee and the Trust, arose out of Stanwich Financial Services, Corp.'s ("Stanwich") default on periodic payment obligations to more than two hundred former tort plaintiffs ("Payees") from around the country who entered into structured settlements to settle their individual actions. Stanwich was contractually obligated to make periodic payments to these Payees for approximately twenty (20) years after the Bradleys acquired complete control of the settlement company.

Pardee and the Trust were shareholders in Settlement Services Treasury Assignments, Inc. ("SSTAI"), later renamed Stanwich by the Bradleys, until May 20, 1997, when each sold his or its total interest therein pursuant to the terms of a Stock Purchase Agreement By and Among Settlement Services Treasury Assignments, Inc. and SST Acquisition Corp. ("Stock Purchase Agreement"). CPS was a party to that agreement and agreed to indemnify Pardee and the Trust for, inter alia, any damages arising out of Stanwich's subsequent failure to make any periodic payments and any claim that the purchase and sale constituted a fraudulent transfer or conveyance. Despite Pardee's and the Trust's requests for indemnification following Stanwich's defaults and the commencement of the fraudulent transfer litigation in Connecticut, CPS has refused to do so.

## II.     PARTIES AND JURISDICTION

1.      Plaintiff Jonathan H. Pardee is a resident of Newport, Rhode Island.

2. Plaintiff Carol P. Havican, Trustee of the Jonathan H. Pardee Charitable Remainder Trust, is a resident of Newport, Rhode Island.

3. Defendant Consumer Portfolio Services, Inc. is, on information and belief, a corporation organized and existing under the laws of the State of California.

### III. GENERAL ALLEGATIONS

4. A structured settlement is a tax-driven vehicle for settling a tort action, typically actions for personal injury, products liability, or medical malpractice. In a structured settlement, the plaintiff enters into a settlement agreement with a defendant that provides for periodic payments in settlement of his or her claims. The defendant then assigns the liability under the settlement agreement to a third party assignment company in exchange for a one-time cash payment. The assignment company makes periodic payments to the original tort plaintiffs and, typically, a lump sum payment when the stream of periodic payments runs out.

5. Stanwich is a structured settlement assignment company for over 200 structured settlements that were established in the late 1970s and early 1980s when Stanwich was known as IBAR, Inc., Merrill Lynch IBAR, Inc., Merrill Lynch Settlement Services, Inc., or ML Settlement Services, Inc.

6. Jonathan Pardee was an officer and majority shareholder of SSTAI from March 1, 1993, until May 20, 1997, and the Trust was a minority shareholder. Bradley Sr. and Bradley Jr., as equal and controlling shareholders, changed the name of the settlement company from SSTAI to Stanwich immediately following Pardee's and the Trust's sale of their total interests in SSTAI in 1997. Neither Pardee nor the Trust has had any involvement with, employment by, or ownership interest in, SSTAI since May 20, 1997, and never had any involvement with Stanwich.

3

7. The following individuals or entities were parties to the Stock Purchase Agreement governing the sale of Pardee's and the Trust's respective interests in SSTAI:

(a) Pardee and the minority shareholders of SSTAI, the Trust and the Dunbar/Wheeler Trust, collectively and individually referred to in the Stock Purchase Agreement as the "Sellers;"
(b) Ogden H. Sutro of the Dunbar/Wheeler Trust
(c) Charles E. Bradley as President of SST Acquisition Corp., referred to as the "Purchaser" in the Stock Purchase Agreement; and
(d) Charles E. Bradley as Chairman of CPS, referred to as the "Indemnitor" in the Stock Purchase Agreement.

8. In Section 9.02(a) of the Stock Purchase Agreement, CPS, as Indemnitor, agreed and obligated itself to, inter alia:

> Indemnify and hold each of the Sellers, Sutro and each of the Seller's trustees and agents (collectively, the "Seller Indemnified Parties") harmless from and against, and agree to defend promptly each of the Seller Indemnified Parties for, any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal and professional costs and expenses (hereinafter referred to collectively as "Seller Losses"), that any of the Seller Indemnified Parties may at any time suffer or incur, or become subject to, as a result of or in connection with the following (the "Seller Claims"): . . . (iv) any failure of the Purchaser, the Indemnitor and/or the Company [SSTAI or Stanwich], after the date hereof, to carry out and perform its obligations under any agreement, instrument or other document to which the Company is now bound or becomes bound, (v) any fraudulent behavior by the Company, the Purchaser and/or the Indemnitor arising after the date hereof, (vi) any claim that the purchase and sale of the Shares constitutes a fraudulent transfer or fraudulent conveyance under applicable federal or state law and (vii) any failure to fulfill any obligation of the Sellers, the Company [SSTAI or Stanwich] and/or the SSTAI Trust to any Payee as and when due any time after the closing date.

9. Beginning in the fourth quarter of 2000, Stanwich stopped making the periodic payments that were due and owing under the structured settlement agreements.

10. As a result of Stanwich's failure to make the structured settlement payments, the Payees filed dozens of individual and class action lawsuits in California against Stanwich and virtually every other entity or individual ever associated with the structured settlements, including Pardee. These cases (Case Nos. BC 244111, BC244271, BC245412, BC245579,

BC246051, GC026372, BC243787, BC248592, BC248593, BC248594, BC248597, BC248598, BC248599, BC248600, and BC249418) were related under the local court rules, assigned to the complex litigation calendar of the Los Angeles County, California, Superior court and comprise the "California Action", with BC244111 being the "lead" case.

11. On or about August 14, 2002, another complaint was filed by a plaintiff in the original cases and two additional plaintiffs, also stating claims in connection with the failure of Stanwich to make payments to structured settlement payees. This case was Case No. BC279691. The same lawyers who filed BC279691 were also counsel for plaintiffs in the "California Action".

12. On or about January 7, 2003, pursuant to the motion of plaintiffs' counsel and the Order of the Los Angeles Superior Court, BC279691 was related to the "lead" case BC244111, and BC244111 was confirmed as "the lead case."

13. The major distinction between the "California Action" and the "California TIGRs Action" is the manner in which the structured settlements were funded. The "California Action" (which included one of the California TIGRs Action plaintiffs) defined its payees as those with U.S. Treasury funded settlements, while the "California TIGRs Action" covered those payees with U.S. Treasury derivative funded settlements.

14. Pardee incurred substantial Seller Losses, as defined under the Stock Purchase Agreement in connection with the actions in California ("the California Litigation") including, but not limited to, attorneys' fees and costs plus accrued interest on those fees and costs for which CPS is obligated to indemnify Pardee.

15. On or about June 25, 2001, Stanwich filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Connecticut.

16. On or about May 3, 2002, the Official Committee of Unsecured Creditors of Stanwich Financial Services Corp. ("Creditors' Committee"), as Estate Representative and on behalf of Stanwich and its creditors, commenced an adversary proceeding which included both Pardee and the Trust in the Bankruptcy Court. The Creditors' Committee asserted claims for, among other things, fraudulent conveyance under 11 U.S.C. § 544(b).

17. Pardee and the Trust already have incurred, and will continue to incur, substantial Seller Losses, as defined under the Stock Purchase Agreement in connection with the Connecticut Litigation, including, but not limited to, attorneys' fees and costs plus accrued interest on those fees and costs for which CPS is obligated to indemnify Pardee and the Trust.

18. Pursuant to the provisions of Paragraph 9.02(a) of the Stock Purchase Agreement, CPS has an obligation to indemnify Pardee and the Trust for all "Seller Losses," defined as "any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal and professional costs and expenses that . . . (Pardee and the Trust) may at any time suffer or incur, or become subject to, as a result of or in connection with" the California Litigation and Connecticut Litigation. CPS also has an obligation to fund the costs of defense of Pardee and the Trust in all of the litigations referenced in this Complaint.

19. On or about May 29, 2001, Pardee made a written indemnification demand on CPS, including a demand that CPS indemnify and pay for Pardee's attorneys' fees and costs. Pardee sent copies of the demand to CPS and its attorneys in accordance with the terms of the Stock Purchase Agreement. When the United States Postal Service returned the demand that Pardee sent to CPS as non-deliverable, Pardee sent a copy of the demand to CPS's counsel in

the California Litigation on June 15, 2001.

20. CPS responded to Pardee's indemnification demands by letter dated June 19, 2001. CPS denied any obligation to indemnify Pardee.

21. On or about October 11, 2002, Pardee and the Trust made written indemnification demands on CPS, including a demand that CPS indemnify and pay for Pardee's and the Trust's attorneys' fees incurred in connection with the defense of the Connecticut Litigation. Pardee and the Trust sent copies of the demand to CPS and its attorneys in accordance with the terms of the Stock Purchase Agreement.

22. CPS denied Pardee's and the Trust's indemnification demands relating to the Connecticut Litigation on October 30, 2002.

23. On or about September 9, 2004 (at a hearing attended by Defendant's counsel), Plaintiffs were dismissed from the claims which comprised the original California Action, but the California TIGRs Action continued.

24. Shortly thereafter, Pardee sent defendant a specific demand for indemnification for the TIGRs action.

COUNT ONE: BREACH OF CONTRACT

25. Pardee and the Trust incorporate by reference and re-allege paragraphs 1-19 above.

26. Stanwich failed to make contractually required payments to the Payees beginning in or about November, 2000. As a result, in early 2001 the Payees commenced lawsuits against CPS, the Bradleys, every trust company that ever served as trustee, Pardee, and a number of other defendants.

27. Pardee has incurred substantial expenses in all California actions ("the California

Litigation") including, but not limited to, attorneys' fees and costs plus accrued interest on those fees and costs.

28.  Pursuant to the express right of contractual indemnity between Pardee as a Seller, and CPS as Indemnitor, in the Stock Purchase Agreement, Pardee is entitled to recover from CPS the substantial expenses that he has incurred, and will continue to incur, in connection with "the California Litigation", as well as his other Seller's Losses, as defined in the Stock Purchase Agreement, and to be indemnified from CPS for any damages, expenses, or losses that he might sustain as a result of the events alleged above. Pardee was also entitled to entry of an Order requiring CPS to fund Pardee's costs of defense in "the California Litigation". However, with all "California Litigation" now fully resolved in Pardee's favor, with no judgment against him or settlement by or on behalf of him, and all statutes having run, the CPS obligation to defend promptly has become moot.

29.  CPS has breached its contractual obligations to Pardee in failing to indemnify him as the Stock Purchase Agreement requires, and in failing and continuing to fail to provide for the costs of his defense in "the California Litigation".

30.  Pardee has incurred substantial damages as a result of CPS's breach.

## COUNT TWO: BREACH OF CONTRACT

31.  Pardee and the Trust incorporate by reference and re-allege paragraphs 1-25 above.

32.  As a result of Stanwich's failure, while under the Bradleys' complete control, to make contractually required payments to Payees in "the California Litigation", and inability to satisfy other debts due and owing its creditors, Stanwich filed for bankruptcy in Connecticut in 2001.

33. Subsequent thereto, the Creditors' Committee commenced an adversary proceeding against a number of defendants, including Pardee and the Trust, asserting, among other things, that SST Acquisition Corp.'s purchase of Pardee's and the Trust's interests in SSTAI constituted a fraudulent conveyance.

34. Pursuant to the express right of contractual indemnity between Pardee and the Trust as Sellers, and CPS as Indemnitor, in the Stock Purchase Agreement, Pardee and the Trust are entitled to recover from CPS the substantial expenses that each has incurred, and will continue to incur, in connection with the Connecticut Litigation, as well as other Seller's Losses, as defined in the Stock Purchase Agreement, and to be indemnified from CPS for any damages, expenses, or losses that each might sustain as a result of the events alleged above. Pardee and the Trust were also entitled to entry of an Order requiring CPS to fund the Pardee Parties costs of defense in "the Connecticut Litigation". However, with all "Connecticut Litigation" now fully resolved in favor of the Pardee Parties, having been dismissed with prejudice, with no judgment against them or settlement by or on behalf of them, the CPS obligation to defend promptly has become moot.

35. CPS has breached its contractual obligations to Pardee and the Trust in failing to indemnify each as the Stock Purchase Agreement requires, and in failing and continuing to fail to provide for the costs of their defenses in "the Connecticut Litigation".

36. Pardee and the Trust have incurred substantial damages as a result of CPS's breach.

COUNT THREE: DECLARATORY RELIEF

37. Pardee and the Trust incorporate by reference and re-allege paragraphs 1-31 above.

38. Pardee and the Trust made written demands for indemnification on CPS. CPS

denied any indemnification obligations. CPS also has failed to make indemnification payments to Pardee and the Trust that the Stock Purchase Agreement required.

39. An actual controversy exists between Pardee, the Trust, and CPS regarding the correct interpretation of the Stock Purchase Agreement that substantially affects Pardee's and the Trust's substantive rights under the Stock Purchase Agreement.

40. Pardee and the Trust seek a judicial declaration, pursuant to R.I. Gen. Laws § 9-30-1 et seq., of their rights to indemnification from CPS in connection with the California and Connecticut Litigation.

**WHEREFORE**, Pardee and the Trust pray for judgment against CPS as follows:

1. For damages according to proof;

2. For indemnification of "any and all losses, damages, costs, expenses, fines, penalties, settlement payments and expenses, liabilities, obligations and claims of any kind, including, without limitation, reasonable attorneys' fees and other legal and professional costs and expenses" that Pardee or the Trust have incurred or may incur or become subject to in connection with all California actions ("the California Litigation") and "the Connecticut Litigation" and any other related lawsuits, including this one;

3. For a judicial determination of the obligation of CPS to indemnify Pardee and the Trust for all Seller's Losses incurred in connection with "the California Litigation" and "the Connecticut Litigation" and provide for payment of all defense costs, with interest, in connection with the defense of those actions;

4. For costs of suit herein incurred;

5. For attorneys' fees herein incurred pursuant to R.I. Gen, Laws § 9-1-45;

6. For accrued interest on all monetary damages; and

7. For such other and further relief as the court may deem proper.

| | |
|---|---|
| Plaintiffs,<br>By their attorney, | Plaintiffs,<br>By their attorney, |
| */s/ Marc DeSisto*<br>Marc DeSisto (#2575)<br>DESISTO LAW<br>211 Angell Street<br>P.O. Box 2563<br>Providence, RI 02906-2563<br>Phone: (401) 272-4442<br>Fax: (401) 272-9937<br>marc@desistolaw.com | */s/ Rene P. Tatro*<br>René P. Tatro, Esq.<br>Tatro Tekosky Sadwick LLP<br>333 S. Grand Avenue<br>Suite 4270<br>Los Angeles, CA 90071-1522<br>213-225-7171<br>213-225-7151 fax<br>ReneTatro@ttsmlaw.com |

### **CERTIFICATION OF SERVICE**

I hereby certify that a copy of the within was filed electronically on January 13, 2012 and is available for viewing and downloading from the ECF system and that the counsel of record listed below will receive notice via the ECF system:

Matthew F. Medeiros, Esq.  
mfm@lmkbw.com

Scott K. Pomeroy, Esq.  
spomeroy@lmkbw.com

Christopher H. Little, Esq.  
clittle@lmkbw.com

Max Wistow, Esq.  
mw@wistbar.com

I hereby certify that a true and accurate copy of the within document was mailed, postage prepaid on this 13th day of January, 2012, to:

Ogden H. Sutro and the  
Dunbar/Wheeler Trust  
c/o Jonathan M. Wainright, Esq.  
Cadwalader Wickersham & Taft  
One World Financial Center  
New York, NY 10281

*/s/ Marc DeSisto, Esq.*